# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT SCOTT CORMACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. CIV-22-00804-PRW |
| EMCOR GOVERNMENT SERVICES | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are the Motion for Summary Judgment (Dkt. 42), filed by Defendant EMCOR Government Services, Inc. ("EMCOR), Plaintiff's Response (Dkt. 49), and EMCOR's Reply (Dkt. 52). Having considered the pleadings and applicable legal authorities, the Court **DENIES** the Motion (Dkt. 42).

### *Background*

This is a personal injury case. The parties do not dispute that on or about April 12, 2018, Plaintiff Robert Scott Cormack worked as a security guard at the William J. Holoway, Jr. United States Courthouse for the U.S. District Court for the Western District of Oklahoma in Oklahoma City. At the same time, EMCOR contracted with the General Security Administration ("GSA") to provide various services at the Courthouse.

On April 12, 2018, Cormack was assigned to the east alleyway, where there is a hydraulic gate with a security arm which lifts to allow vehicles to enter the property. Cormack walked near the gate while it was raised and was allegedly struck and injured as

it lowered. On April 8, 2020, Cormack sued Defendant, alleging that it negligently installed, maintained, repaired, and serviced the gate. EMCOR now moves for summary judgment.

### Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A genuine issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[2] Evidence that is "merely colorable" or "not significantly probative" will not defeat a motion for summary judgment.[3] A fact is material if it "might affect the outcome of the suit under the governing law."[4]

The moving party bears the initial burden of showing beyond a reasonable doubt the absence of a genuine issue of material fact.[5] Once the movant has met his initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[6] Courts may only consider admissible evidence in reviewing summary judgment, but the evidence need not be submitted "in a form that would be

---

[1] Fed. R. Civ. P. 56(a).

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[3] *Id.* at 249–50.

[4] *Id.* at 249.

[5] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

[6] *Anderson*, 477 U.S. at 256

admissible at trial."[7] Rather, the proponent must merely show that the evidence is capable of presentation in an admissible form.[8] Courts must view all facts and reasonable inferences in the light most favorable to the nonmovant.[9]

Under Oklahoma law, the elements of the tort of negligence are: "(1) a duty of care owed by defendant to plaintiff, (2) defendant's breach of that duty, and (3) injury to the plaintiff caused by defendant's breach of that duty."[10] In the absence of a contractual duty, "a defendant's duty 'depends on the relationship between the parties and the general risks involved in the common undertaking.'"[11] Oklahoma courts consider certain factors to determine whether a duty existed, including "the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct," and (most importantly) the foreseeability of the harm.[12]

### *Analysis*

EMCOR argues that "there is no relationship" between it and Cormack "which could in any way impose a duty on" EMCOR and that the record contains no evidence that

---

[7] *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (internal quotation marks omitted) (quoting *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006)).

[8] *Id.* (citations omitted).

[9] *Anderson*, 477 U.S. at 255.

[10] *See Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007) (cleaned up) (citing *Nicholson v. Tacker*, 512 P.2d 156, 158 (Okla. 1973)).

[11] *Snow v. TravelCenters of Am. LLC*, 527 P.3d 741, 753 (Okla. Civ. App. 2022) (citing *Wofford v. Eastern State Hosp.*, 795 P.2d 516, 519 (Okla. 1990)).

[12] *Id.* (alteration removed) (collecting cases).

it installed, maintained, repaired, or serviced the gate.[13] In support, it attaches an affidavit of EMCOR Director of Environmental Safety and Quality Performance Excellence James Morano, who attests that he is knowledgeable about "the specific type and scope of the services provided by EMCOR at the . . . Courthouse," as well as Cormack's Petition, and he maintains that EMCOR "did not install, maintain, or repair," nor was it responsible for, the gate. [14]

The parties dispute whether the contract in place between the GSA and EMCOR at the time of the incident demonstrates that EMCOR was responsible for the gate. EMCOR maintains that the contract "lists the services provided by EMCOR at the" Courthouse, but "[i]t does not list any services or maintenance provided by Defendant involving the gate."[15] It appears to rely on the Annual Preventive Maintenance Requirements table (which lists "[a]ll equipment to receive [preventative maintenance]")[16] for building number OK0074.[17] However, this particular table pertains to the "Federal Building/Courthouse" in Lawton.[18] The table for the Oklahoma City Courthouse is found at OK0072.[19] It lists, among other

---

[13] Def.'s Mot. for Summ. J. (Dkt. 42), at 6–7.

[14] Aff. of James Peter Morano (Dkt. 42-1, Ex. 1).

[15] Def.'s Mot. for Summ. J. (Dkt. 42), at 6–7; *see also* Def.'s Reply (Dkt. 52), at 2.

[16] Contract (Dkt. 42-2, Ex. 2), at 17, 110.

[17] Def.'s Reply (Dkt. 42), at 2; *see also* Contract (Dkt. 42-2, Ex. 2), at 115–116 (listing, among other things, two parking lot gates and six "GATES, SECURITY AND ACCESS.").

[18] Contract (Dkt. 42-2, Ex. 2), at 115

[19] *Id.* at 113–114; *see also id.* at 6.

things, five "GATES, SECURITY AND ACCESS."[20] EMCOR argues that this phrase refers to security and access points around the building and does not specifically require EMCOR to maintain the gate.[21] The phrase, however, does not preclude EMCOR's responsibility for maintaining the gate, especially when viewed in the light most favorable to Cormack. In fact, Cormack directs the Court to several provisions of the contract that may show that it was responsible for maintaining the gate.[22]

Further, Cormack attaches his affidavit, in which he attests that he "ha[s] personal knowledge that [EMCOR] has provided repair and maintenance services to the Courthouse, including the" gate.[23] Specifically, in the past, when the gate would malfunction, Cormack or one of his coworkers "would contact 'building maintenance,'" and an EMCOR representative "would appear[,] inspect the gate, review its operation[,] and repair the gate so that it was functional[.]"[24] In fact, before the incident occurred, Cormack had

---

[20] *Id.* at 114.

[21] Def.'s Reply (Dkt. 52) at 2.

[22] *See* Dkt. 42-2 at 6 ("[EMCOR] shall provide all management, supervision, labor, materials, supplies, repair parts, tools and equipment and shall plan, schedule, coordinate, and effective performance of all services described[.]"), 111–14 (showing the contract required EMCOR to perform "annual preventative maintenance" on "GATES, SECURITY AND ACCESS" (cleaned up)), 95 (requiring EMCOR to, "periodically inspect the interior and exterior condition of the building(s), the tenants' work areas, the corridors, toilet rooms, lobbies, and other public areas to identify building areas that may be deteriorating"), 134 ("[EMCOR] shall provide all labor, equipment and materials necessary to perform all architectural and structural maintenance and repairs to the interior and exterior of the facility, including, but not limited to . . . sidewalks [and] driveways . . . ."), 135 ("[EMCOR] shall maintain in a safe and usable condition power doors, such as garage and loading ramp doors, revolving doors, sliding or swinging doors and adjustable loading ramps.")

[23] Aff. of Robert Scott Cormack (Dkt. 49-1, Ex. 1), ¶ 3.

[24] *Id.* ¶ 4 (emphasis removed).

"personally viewed [EMCOR] employees" performing maintenance on and repairing the gate "on multiple occasions."[25]

Cormack included several attachments with his affidavit, including (1) a blurry photograph of a man in a red shirt riding what appears to be a forklift outside of a gate, which apparently depicts an EMCOR employee working on the gate,[26] and (2) pictures of a handwritten document titled "Gate error log", with entries from April 19, 30, and May 14, 2018, highlighted to show that EMCOR was notified or involved in the repair of the gate on each occasion.[27] EMCOR argues that the "Gate error log" is inadmissible,[28] but even if that is so, EMCOR does not dispute Cormack's testimony that he has personally viewed EMCOR employees work on the gate.[29] Viewing this testimony, the provisions of the contract that Cormack cited, and the photograph in the light most favorable to him, a reasonable jury could find that EMCOR in fact maintained the gate.

Finally, EMCOR attached to its Reply a second affidavit from Morano, in which he attests EMCOR utilizes certain procedures when it services or repairs equipment for GSA that generate documentation of the work order.[30] Mr. Morano states that no documentation

---

[25] *Id.* ¶ 5 (emphasis removed).

[26] *Id.* at 7.

[27] *Id.* at 4–6. Cormack also included a document titled MVM, Inc Form 600-7 Worker's Compensation Report, which details the incident. *Id.* 11.

[28] Def.'s Reply (Dkt. 52) at 3–4.

[29] *See* Aff. of Robert Scott Cormack (Dkt. 49-1, Ex. 1), ¶¶ 4–5.

[30] 2d Aff. of James Peter Morano (Dkt. 52-1, Ex. 1), ¶¶ 6–7.

exists substantiating a servicing or a repair of the gate prior to the incident.[31] But because Cormack has provided sufficient evidence indicating that EMCOR actually did service the gate, there remains a genuine issue of material fact. Thus, summary judgment is inappropriate.

### Conclusion

Accordingly, the Court **DENIES** the Motion (Dkt. 42).

**IT IS SO ORDERED** this 25th day of September 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[31] *Id.*